## GANDÍA *v.* PIZÁ HERMANOS, S. EN C.

APELACIÓN procedente de la Corte de Distrito de San Juan.

No. 683.—Resuelto en junio 20, 1911.

DESESTIMACIÓN DE LA APELACIÓN—TÉRMINO PARA PEDIR LA DESESTIMACIÓN.—De acuerdo con el artículo 62 del Reglamento del Tribunal Supremo, la desestimación de una apelación debe pedirse antes de celebrada la vista, y si no se hace así y se solicita la desestimación en el acto de la vista, debe declararse sin lugar la moción.

UTILIDADES DE UNA SOCIEDAD MERCANTIL—GANANCIAS LÍQUIDAS.—La palabra utilidades usadas en relación con una sociedad mercantil, generalmente equivale a la expresión ''ganancias líquidas.''

SENTENCIA AJUSTADA A DERECHO—FUNDAMENTOS ERRÓNEOS.—Cuando una senten-
cia es justa y está de acuerdo con la ley, no debe ser revocada por ser erróneos
algunos de sus fundamentos consignados en la opinión.

SOCIO INDUSTRIAL—CONTRATO DE SOCIEDAD MERCANTIL—APODERADO DE UNA CASA
DE COMERCIO.—Examinada la prueba y considerando que el demandante no
fué parte en el contrato de constitución de sociedad mercantil de la sociedad
demandada, ni prestó su conformidad a su otorgamiento, el tribunal resolvió,
que no puede considerársele como socio industrial sino como un empleado de
la sociedad demandada y como tal fué designado en la escritura social.

CONGRUENCIA DE LA DEMANDA CON LA PRUEBA.—La congruencia que debe existir
entre las alegaciones de la demanda y la prueba no ha de ser literal sino sus-
tancial, pudiendo completarse con la prueba los hechos expuestos en la de-
manda.

INCREMENTO DE VALOR DE UNA FINCA—UTILIDADES LÍQUIDAS DE UNA SOCIEDAD
MERCANTIL—PARTICIPACIÓN DE UN EMPLEADO EN DICHAS UTILIDADES.—Te-
niendo en cuenta que en los distintos balances practicados por la sociedad
demandada, el aumento de valor de sus fincas rústicas por la acción del tiempo
y las circunstancias económicas favorables de la Isla fué incluído en dichos
balances como utilidades líquidas de la sociedad, no cometió error el tribunal
sentenciador al resolver que habiéndose estipulado que el demandante tenía
derecho al 10 por ciento de las utilidades líquidas, debía incluirse también el
10 por ciento del aumento del valor de la finca y ser considerado como parte
de dichas ganancias líquidas.

LIQUIDACIÓN DE LAS GANANCIAS LÍQUIDAS DE UNA SOCIEDAD MERCANTIL—COSECHAS
PENDIENTES.—Los preceptos del artículo 225 del Código de Comercio no son
aplicables a los empleados de una sociedad y sólo se refieren a los socios.

ID.—COSECHAS PENDIENTES—FECHA PARA DETERMINAR LAS UTILIDADES LÍQUI-
DAS DE UNA SOCIEDAD MERCANTIL.—Al retirarse de una sociedad mercantil
un empleado apoderado cuya compensación fué fijada en un sueldo mensual y
en el 10 por ciento de las utilidades líquidas, tiene derecho a exigir que se
tasen las cosechas pendientes en el momento en que se retira de la sociedad y
que se determine el importe del 10 por ciento de las utilidades líquidas inclu-
yendo el valor de dichas cosechas pendientes, sin estar obligado a esperar
su recolección, y toda utilidad o pérdida que se tenga en dicha cosecha con
posterioridad a la fecha en que se retira el empleado apoderado no puede afec-
tarle.

PAGO DE LA PARTICIPACIÓN DEL EMPLEADO EN LAS GANANCIAS LÍQUIDAS DE UNA SO-
CIEDAD—OBLIGACIÓN DE RECIBIR EL IMPORTE EN METÁLICO, MERCADERÍAS, CUEN-
TAS Y OTRAS PROPIEDADES.—Examinada la prueba aportada al juicio, el Tri-
bunal Supremo resolvió que el demandante tenía derecho a que se le pagara en
efectivo su participación del 10 por ciento de las ganancias líquidas de la casa,
sin estar obligado a recibirlas proporcionalmente en metálico, mercaderías,
cuentas y otras propiedades de la sociedad, porque aparte del contrato verbal
justificado en autos, entre el demandante y la sociedad demandada, de los
balances hechos por ésta resulta, que se le ha abonado en la cuenta del deman-
dante el 10 por ciento de las utilidades y dispuso de más de $5,000 a cuenta de
dicho 10 por ciento.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. Juan Hernández López.*

Abogado del apelado: *Sr: Antonio Sarmiento.*

El Juez Asociado Sr. MacLeary, emitió la opinión del tribunal.

El demandante, Ricardo A. Gandía y Caldentey, presentó una demanda en la Corte de Distrito de San Juan, en 31 de marzo de 1910, contra los demandados la casa comercial de Pizá Hermanos, en cuya demanda reclamaba la suma de quince mil trescientos cincuenta y ocho dollars veinte y tres centavos ($15,358.23) que alegaba se le debía, como compensación por los servicios prestados a dicha casa, como empleado y agente de la misma, por virtud de un contrato celebrado con los mencionados demandados, el día 15 de octubre de 1902; habiendo prestado tales servicios en el tiempo que media entre dicha fecha y el 11 de marzo de 1910. En la demanda se alega que el contrato consistía en que el demandante recibiría de los demandados, como compensación, la suma de ciento cuarenta dollars ($140) mensuales, como sueldo, y además el diez (10%) por ciento de las utilidades líquidas obtenidas en el negocio. Durante más de siete (7) años que el apelado fué empleado de los apelantes, recibió grandes cantidades de dinero, de tiempo en tiempo, y al dejar el referido empleo en la expresada fecha, parece que fué reconocido tácitamente que se le debía un balance en efectivo de siete mil cuatrocientos diez y seis dollars setenta centavos ($7,416.70); pero el resto de la reclamación, ascendente a siete mil novecientos cuarenta y un dollars cincuenta y tres centavos ($7,941.53) fué seriamente controvertida y enérgicamente negado. Después de varios procedimientos, se celebró finalmente un juicio ante la Corte de Distrito de San Juan, que dió por resultado que se dictara sentencia a favor del demandante, por la cantidad total reclamada. Contra esa sentencia, se interpuso apelación para ante este tribunal.

El abogado del apelado solicita en su alegato, y pidió en su informe oral, que se desestimara la apelación, o por lo menos, que no fuera considerada, por motivo de los defectos

de forma en la preparación y presentación de la transcripción de autos y dicho letrado ha discutido ampliamente ese punto. Pero esa cuestión ha sido refutada de modo eficaz por los apelantes que citan la regla 62 de este tribunal, que dispone que todas estas cuestiones deben hacerse y presentarse antes de la vista en este tribunal. Por tanto, esas objeciones llegan muy tarde al celebrarse la vista, y debemos considerar el caso según aparece del récord, y resolverlo por sus méritos.

Los apelantes, en su alegato, presentan siete errores que alegan haberse cometido por la corte inferior, los que expresan detalladamente como sigue:

"1º. La sentencia incurre en error de apreciación de hecho, al establecer los términos en que las partes estuvieron conformes acerca del contrato celebrado entre los Sres. Gandía y Pizá.

"2º. La sentencia incurre en error de derecho y de hecho, no apreciando al Sr. Gandía como un socio industrial de la sociedad Pizá Hermanos, y sí sólo como un empleado.

"3º. La sentencia incurre en error de apreciación de hecho y de derecho, al aceptar los términos del contrato celebrado entre los Sres. Gandía y Pizá, en la manera que los expresa el Sr. Gandía, en su declaración.

"4º. Pero aún aceptando que el demandante fuera sólo un empleado de la casa Pizá Hermanos, y nada más, y aún aceptando todos los términos del contrato, tal y como los declaró el propio demandante, la sentencia comete el error de infringir dicho contrato, o sea la ley fundamental en la materia de este pleito.

"5º. La sentencia comete el error de conceder utilidades por un negocio que estaba pendiente, y que no había sido ni podía ser objeto todavía de liquidación.

"6º. La sentencia comete error al conceder al demandante, utilidades por las siembras de cañas y piñas de 'Santa Bárbara' y Sábana Seca,' siendo así que dichas siembras han producido pérdidas a la sociedad Pizá Hermanos.

"7º. Por último, la sentencia comete error al admitir como utilidades líquidas, las supuestas utilidades de esas siembras y plantaciones, sin resultar de un balance de gastos e ingresos, para llegar a la conclusión de un saldo en pro o en contra, cierto y seguro."

Examinemos ahora estas varias proposiciones por el orden en que han sido presentadas por los apelantes.

Primera. ¿Cometió error la corte inferior, al interpretar los términos del contrato celebrado entre las partes en la forma en que lo hizo?

Manifiesta el apelado que el apelante no cita ningún estatuto o decisión que haya sido infringido o desatendido al considerar los hechos con que quedó establecido el contrato o al interpretar el mismo. Pero, omitamos esto, y veamos de qué modo llegó el juez sentenciador a una conclusión con respecto a los términos de este contrato. El juez de la corte inferior, dice los siguiente en su opinión:

"2º. Que la compensación convenida entre el demandante y los demandados, por tales servicios, fué ciento cuarenta dollars ($140) mensuales, y el 10 por ciento de las utilidades del capital social.''

El abogado cita la declaración del demandante al efecto de que el contrato expresaba que éste recibiría el diez por ciento (10%) de las utilidades líquidas, que se le abonó en su cuenta particular, única que tenía, y que no había cuenta de ganancias que tuvieran que liquidarse después. Parece que el error alegado consiste en que la corte omitió la palabra *líquida* del resumen del caso. Si esta omisión inadvertida fué un error, no era perjudicial, puesto que las ganancias líquidas eran las únicas que se tuvieron en cuenta al sumar la corte las partidas, y dictar sentencia. Según el uso corriente, el término utilidades, generalmente hace referencia a las que resultan después de considerarse todas las entradas y salidas, siendo equivalente a ganancias líquidas, a menos que se les haya consignado como ganancia total. No hay duda alguna de que en tal sentido fué que la corte inferior usó el término ganancias, al redactar la opinión a que se ha hecho referencia. Si el juez sentenciador cometió error respecto a este particular, puede ser que fuera inducido al mismo, por la forma en que aparecía el contrato de sociedad, hecho por los apelantes entre sí, en el que se dice que, al cesar, como empleado, el apelado u otro,

deberá pagarles aquella parte de las utilidades (no utilidades líquidas) a que tengan derecho. Y además de este error, si así fuera, aparece solamente en la opinión de la corte inferior, y no en la sentencia. Si la sentencia es correcta, y fuesen erróneos sus fundamentos, no obstante esto, dicha sentencia será válida, según hemos resuelto repetidas veces. Por tanto, el primer error carece de mérito suficiente, para que se le considere más detenidamente.

Segunda. ¿Debió la corte haber considerado, en su sentencia al apelado como un socio industrial de la casa mercantil de los apelantes, y nó como un simple empleado? Los apelantes admiten que el apelado era empleado, pero alegan que a su vez era socio industrial, y como tal debió haber sido considerado en el juicio de este caso y en la sentencia dictada, contra la cual se ha interpuesto esta apelación. Veamos lo que entiende la ley por socio industrial. Indudablemente que él es un socio de alguna clase, y como tal debe considerársele antes de ser clasificado como socio industrial, especial, general o de otra clase. Una sociedad, según nuestro Código Civil (art. 1567), es: "un contrato por el cual dos o más personas se obligan a poner en común, dinero, bienes o industria, con ánimo de partir entre sí las ganancias." En igual sentido se expresan los artículos 116 y siguientes del Código de Comercio. Y cuando alguno de los socios aporte bienes inmuebles, la sociedad debe constituirse por escritura pública. (Art. 1569 del Cód. Civil.) La sociedad de Pizá Hermanos, en este caso, se constituyó por escritura pública. Pero el apelado no fué parte en dicha escritura; él no prestó conformidad a su otorgamiento, ni la firmó; ni vió dicha escritura hasta meses después de su otorgamiento y de haber sido registrada. ¿De qué modo puede ser él parte en una escritura pública de cuya existencia ni siquiera tenía conocimiento? Y nuestro Código Civil determina de modo explícito en su artículo 1224 "que los contratos de sociedad lo mismo que cualesquiera otros, sólo producen efectos entre las partes que los otorguen."

Además, en la única cláusula del contrato escrito de socie-

dad de los apelantes, en que se menciona al apelado, se le designa como empleado y no como socio. Por tanto, no habiendo firmado el demandante la escritura, no estaba obligado por el contrato de sociedad, no siendo socio de la casa mercantil de Pizá Hermanos, industrial ni de otra clase.

Tercera. ¿Cometió error la corte inferior al aceptar la teoría del apelado, respecto al contrato de servicios? La declaración del demandante (apelado en este tribunal) era digna de consideración, lo mismo que la de cualquier otro testigo, teniendo en cuenta, desde luego, el hecho de que esa parte estaba interesada en el resultado del pleito. Pero los apelantes alegan que esta declaración no resulta conforme con las alegaciones hechas en la demanda, estableciéndose un gran paralelo entre ellas. El abogado de los apelantes expresa en su alegato, que el demandante alega en su demanda lo siguiente:

"3°. Que desde el día 15 de octubre de 1902, en que fué nombrado por la sociedad demandante, su empleado, el peticionario ha venido prestando sus servicios a la sociedad mencionada, como tal empleado, hasta el once del mes actual de marzo de 1910.

"4°. Que la retribución convenida para dichos servicios, fué ciento cuarenta dollars ($140) de sueldo mensual, y el diez por ciento (10%) de las utilidades líquidas."

Por tanto, se alega que el apelado, como testigo, agrega a estas alegaciones que el diez por ciento (10%) "De las utilidades líquidas se le abonaron después de cada balance, junto con su sueldo, en su cuenta particular, y que todas esas ganancias y su salario estaban entonces a su entera disposición, y que, según las disposiciones del Código, los balances habían de practicarse anualmente, o por lo menos, lo más cerca posible de esa fecha." Esta manifestación a nuestro juicio, no contradice las alegaciones contenidas en la demanda, y son únicamente explicativas de las mismas. La prueba no debe expresarse en las alegaciones en la misma forma en que ha de aparecer en el juicio, sino se exige solamente que se aleguen los hechos esenciales. Es cierto que las alegaciones y la

prueba deben ser congruentes, sin embargo, esta conformidad no ha de ser literal sino sustancial, y necesariamente la prueba debe ser más acabada que las alegaciones. El testigo podía expresar propiamente en su declaración, la forma en que le había sido pagado anteriormente el sueldo y la compensación, al empezar a regir el contrato, y la forma en que habían sido abonados a su cuenta, los créditos a los cuales tenía derecho. La declaración no difería de la demanda, sino que por el contrario, estaba conforme con ella.

Además, la declaración del apelado está sostenida por otra prueba que consta en autos. Al examinar los cinco balances hechos por los apelantes, y que mostraban la condición del negocio en los años 1904, 1905, 1906, 1907 y 1910, de todos ellos resulta que se les abonó a Gandía y Picó el diez por ciento de las utilidades reclamadas, y que estos créditos estaban sujetos a sus libramientos. Por tanto, la corte inferior no cometió error al aceptar como correcta, la teoría del apelado respecto al contrato.

Cuarta. Pero se alega como error que la sentencia es contraria al contrato celebrado entre las partes. Veamos. Desde luego, que el contrato debe aceptarse como determinando los derechos y obligaciones de las partes en el pleito, o como se ha dicho "es la ley del caso." El punto esencial al cual se dirige este señalamiento de errores parece ser que con arreglo al contrato, el demandante podía recibir solamente el diez por ciento (10%) de las ganancias *líquidas,* y que dejó el empleo el 11 de marzo, y reclamó su participación en las ganancias líquidas hasta esa fecha, sobre una valoración que entonces se hizo del capital social, incluyendo la finca "Santa Bárbara"; y que se cometió error en la sentencia al conceder al demandante el diez por ciento (10%) de la diferencia entre el valor de dicha finca en esa fecha, y el precio pagado por la misma, por la referida casa mercantil, según aparece del inventario. Se hizo objeción a la admisión de las declaraciones de peritos sobre este punto. El valor de la finca Santa Bárbara, en la fecha en que el apelado dejó el empleo de los ape-

lantes, se considera como no esencial a la cuestiones plantea-
das en este pleito, afirmándose que el apelado no tenía parti-
cipación en ella, y sí solamente en las cosechas de dicha finca.
Se ha alegado que el aumento en el valor de esta finca, que
pertenece a la citada sociedad, como parte de su capital, no
puede considerarse como ganancia líquida en la que el de-
mandante tenía derecho a una participación. Se dice que este
aumento, este inmerecido aumento, es debido a la época y cir-
cunstancias económicas favorables que han afectado a todas
las propiedades en la isla, desde el año 1900, y particular-
mente a terrenos dedicados al cultivo de la caña y de la piña.
Parece olvidarse que esta finca fué adquirida en un precio
bajo, y el propio demandante, como agente de la sociedad,
hizo la operación, y aseguró la compra. Pero esa cuestión no
es necesario considerarla.

El aumento en el valor de la finca, fué considerado debida-
mente con arreglo a los términos del contrato de servicios,
como parte de las utilidades líquidas. También esto aparece
del hecho de que en los balances hechos en los años 1904, 1905
y 1906, ese aumento se consideró como utilidad líquida, abo-
nándosele al demandante el diez por ciento (10%) de la misma,
como parte de su compensación. Este retiró de tiempo en
tiempo su sueldo de ciento cuarenta dollars ($140) mensuales,
y, además, una cantidad mayor de cinco mil dollars ($5,000)
a cuenta de las utilidades líquidas, de las que el referido au-
mento en el valor de la finca formaba parte. De igual modo,
en los balances hechos en los años 1907 y 1910, el demandante
aparece como acreedor de la sociedad, por la sumas de nueve
mil cuatrocientos cincuenta dollars treinta y tres centavos
(9,450.33) y siete mil setecientos ochenta y nueve dollars cin-
cuenta y siete centavos ($7,789.57) respectivamente. El au-
mento en el valor de la "Santa Bárbara" está incluído en es-
tas sumas que forman las considerables sumas expresadas.
Y en el negocio de una casa mercantil como es la de los ape-
lantes, que tienen varios establecimientos comerciales, plan-
taciones de caña y propiedades de piña, y que hacen negocios

en bienes inmuebles, deben incluirse en el balance, todas las
utilidades cualquiera que sea su procedencia, al calcularse las
ganancias líquidas que resulten del negocio. Por tanto, el
cuarto señalamiento de errores, no está bien fundado.

Quinto. ¿Se cometió error en la sentencia, al hacerse al
apelado abono por utilidades obtenidas en un negocio de los
apelantes, que estaba aún pendiente en la fecha en que se esta-
bleció el pleito, y que no pudo entonces ser objeto de liquida-
ción? En apoyo de una contestación categórica a esta propo-
sición, el abogado de los apelantes cita el artículo 225 del
Código de Comercio. Este artículo se refiere a un socio que
se retire de una sociedad, y nada tiene que ver con empleados,
por tanto, si el demandante era un empleado, y no un socio,
el artículo citado no tiene aplicación. Un empleado puede
retirarse siempre que lo crea conveniente, con tal que no in-
frinja el contrato en virtud del cual fué empleado. Y este
artículo del Código de Comercio, no puede aplicarse, por ana-
logía, al caso de empleados o de un apoderado, puesto que
las circunstancias, derechos y obligaciones que existen entre
ellos y la sociedad, son completamente distintos de las que
corresponden y rigen entre los socios. Interpretado debida-
mente este señalamiento de errores, en realidad estriba en el
significado que se dé a las palabras *utilidades líquidas.* Se-
gún el criterio adoptado por la corte inferior, con el que esta-
mos de acuerdo, dichas utilidades podrían determinarse en
cualquier fecha, pudiendo el apelado reclamar justamente que
se fijara su compensación sobre la base de las ganancias líqui-
das, según aparecían en 11 de marzo de 1910, fecha en que
cesó como empleado de la sociedad de los apelantes. Una
circunstancia de poca importancia corrobora la corriente ge-
neral de las declaraciones, que justifica el criterio sostenido
por el apelado. Puede hacerse referencia a la misma. Al
hacer el balance en 1904, los apelantes incluyen en él, como
parte de su capital en dinero efectivo, 22,000 quintales de
caña, que todavía tenía que molerse. La interpertación que
ahora sostiene el apelado, y que fué adoptada por la corte

inferior, fué la misma que los apelantes voluntariamente asumieron hace siete años. El empleado, Gandía, no tenía derecho a participar en ninguna ganancia que se obtuviera después de la fecha de su renuncia, ni podía rebajársele su compensación con motivo de pérdidas posteriores. El negocio de la sociedad siguió como de ordinario, después de retirarse este empleado, y ni él ni la sociedad sufrieron perjuicio alguno por ello. Por consiguiente, este señalamiento de errores carece de fundamento.

Sexta. ¿Tenía derecho el apelado a las utilidades de las cosechas de cañas y piñas en las dos fincas "Santa Bárbara" y "Sabana Seca," en el supuesto de que la sociedad hubiese sufrido alguna pérdida en tales cosechas? El mismo razonamiento que se ha aplicado a la última proposición, también es aplicable a ésta. El balance fué hecho correctamente en 11 de marzo de 1910, y el valor de las cosechas en esa fecha, era la suma sobre la cual había de calcularse el (10%) diez por ciento correspondiente al apelado. Cualesquiera ganancias o pérdidas que después sobrevinieran, se relacionaban solamente con los apelantes; y el apelado no tenía ninguna participación en las mismas. Todas las declaraciones con respecto a este particular, la de Picó entre las otras, no eran esenciales y no importa lo que con ellas se demostrara. Dichas declaraciones fueron admitidas debidamente, puesto que el demandante no hizo ninguna objeción a las mismas durante el juicio; pero la corte inferior correctamente hizo caso omiso de ellas, al dictar su sentencia en este caso. Supongamos que los precios de las frutas y del azúcar hubieran, entre tanto, duplicado o triplicado entre el 11 de marzo y 6 de septiembre, o sean las fechas respectivas, en que salió el apelado del servicio de los apelantes, y se celebró el juicio de la causa, el aumento en las utilidades hubiera servido solamente para beneficio de la sociedad, y el empleado no hubiera tenido derecho a participar en ellas. Así pues, si otro huracán hubiera azotado a la isla el 8 de agosto, y destruído enteramente las cosechas en las referidas haciendas, solamente los apelantes hubieran tenido

que sufrir la pérdida y ésta no hubiera afectado a los derechos del apelado. Su compensación se fija por una tasación de la finca hecha en la fecha de su salida de la casa, y no en ninguna fecha posterior a la misma. Las declaraciones de los peritos referentes al valor de las cosechas en "Santa Bárbara" y "Sabana Seca," eran perfectamente competentes, y fueron admitidas debidamente. Además, no se hizo ninguna objeción a ellas en el juicio, y ahora es muy tarde para hacerlas en esta corte. Por tanto, es innecesario seguir el extenso e ingenioso alegato de los apelantes, con respecto a la verdadera interpretación que ha de darse a la Ley de Evidencia, y a otros estatutos relativos a esta cuestión, puesto que se basa enteramente en lo que consideramos como un concepto erróneo de la cuestión fundamental envuelta en este caso.

Séptima. Finalmente, ¿cometió error la corte inferior, al admitir como utilidades líquidas, el montante en que se había calculado el producto de las cosechas, que aun no se habían recogido, y cuyos gastos y entradas no se conocían todavía, como se expresa substancialmente en el 7º. señalamiento de error? Al hacer esta alegación, el abogado de los apelantes se adhiere a la teoría de que el empleado, al igual que un socio que sale, debe esperar el resultado definitivo de todas las eventualidades del negocio, el acopio de las cosechas, entre otras cosas, antes de que pueda determinarse su participación en las ganancias líquidas. Pero debemos repetir que esta analogía no ocurre entre socios y empleados. Según ya hemos expresado, al romperse las relaciones entre esta sociedad y su empleado, el valor real, en efectivo, de su participación en el negocio, según se encontraba en la fecha de su renuncia, debió haber sido determinado correctamente, y fijada su compensación de conformidad, y pagádole entonces en efectivo. Este fué el contrato, según aparece de los hechos contenidos en los autos, y debemos, según ha insistido el distinguido abogado de los apelantes, aceptar el contrato de servicios como ley en este caso, y resolverlo de conformidad con ella. Así lo hizo la corte

inferior, según entendemos la cuestión, y la sentencia fué correcta.

Pero para reasumir, todo este caso gira sobre tres puntos en que no hay acuerdo entre las partes, los que son o pueden expresarse como sigue:

Primero. En qué forma tiene que recibir el apelado el diez por ciento (10%) de las utilidades; él afirma que debe recibirlo en efectivo, mientras que los apelantes alegan que debe recibirlas, proporcionalmente, en metálico, mercaderías, cuentas y otras propiedades de la sociedad, de acuerdo con la cláusula incluída en la escritura de sociedad de Pizá Hermanos.

Segundo. Con respecto a la valoración de la finca "Santa Barbara," a la que el apelado le calcula un valor de ochenta mil dollars ($80,000), y los apelantes, de sesenta mil dollars ($60,000).

Tercero. Con respecto a la valoración de las utilidades obtenidas en las fincas "Santa Bárbara" y "Sabana Seca," que fueron justipreciadas por el apelado en veinte mil dollars ($20,000), y que según los apelantes, no tenían ningún valor en la fecha en que se estableció la acción.

Para resolver el primer punto de desacuerdo entre las partes en este pleito, debemos expresar que no aparece haber sido probado por la prueba presentada, que el apelado Gandía, fuera un socio especial de la firma Pizá Hermanos, sino por el contrario, que no tenía tal carácter, siendo simplemente un empleado, un apoderado de la casa, con un sueldo fijo de ciento cuarenta dollars ($140) mensuales y además, una compensación del diez por ciento (10%) de las utilidades líquidas de la misma.

En el contrato escrito de sociedad presentado como prueba en este caso, Gandía no aparece como socio de la sociedad; según el referido contrato, no se obligó a dedicar sus energías a la referida sociedad, sino que por el contrario, aparece del anterior documento escrito, que no tenía otra capacidad que la de un empleado y apoderado.

Y se ha admitido, en su informe y alegato, por el distin-

guido abogado de los apelantes, que el demandante era un empleado de los demandados, pero alega él también que era un "socio industrial" por virtud de la ley estatutaria sobre ese punto. Al hacer esta alegación, el abogado hace omisión de las disposiciones del artículo 1224 del Código Civil, que resuelven la cuestión de modo adverso para los apelantes.

Habiendo concluído con este punto, veamos ahora en qué forma puede liquidarse el diez por ciento (10%) de las ganancias líquidas pertenecientes al Sr. Gandía, por virtud de su contrato verbal con Antonio Pizá, único socio gestor de la sociedad mercantil demandada.

De las declaraciones de los testigos llegamos a la conclusión de que el único convenio existente entre el apelado y Antonio Pizá, era el de que el primero había de recibir como completa compensación por sus servicios prestados a dicha sociedad, ciento cuarenta dollars (140) mensuales; y, además, el diez por ciento (10%) de las ganancias líquidas, y que no hubo proposiciones ni convenio hecho con el referido Ricardo Gandía, en el sentido de que habían de distribuirse las ganancias en la forma que alegan los apelantes, que es la misma que se expresa en una de las cláusulas de la escritura de sociedad de la mercantil. Pizá Hermanos.

Las manifestaciones contenidas en la escritura con respecto a este particular, no pueden perjudicar a Gandía, pués según aparece de la prueba, él no las aceptó ni estuvo conforme con ellas en manera alguna, no habiendo hecho ningún convenio de ninguna clase con la sociedad demandada, con respecto a esta cuestión; y ambas partes deben pasar por el contrato verbal celebrado por ellas, el que no determinaba la forma del pago del diez por ciento (10%), según se expresaba en la escritura de sociedad. Que el contrato relativo a los servicios de Gandía, celebrado entre el último y la sociedad demandada, fué en la forma referida por el apelante, está además corroborada por el hecho de que en los balances hechos por la sociedad demandada, en los años 1904, 1905 y 1906, después de la fecha de la escritura de sociedad que contiene la

cláusula a que se ha hecho referencia, la referida sociedad ha abonado a la cuenta de Gandía, el diez por ciento (10%), como su participación en las ganancias; y que durante ese tiempo no solamente ha hecho uso de todo su sueldo, sino también de más de cinco mil dollars ($5,000) que se le debían como suma del referido diez por ciento (10%), resultante de las ganancias líquidas del negocio, de cuya suma podía disponer el demandante en efectivo, cuando creyera conveniente retirar la misma de las cajas de sus principales.

Es cierto que en los dos últimos balances hechos durante los años 1907 y 1910, la compañía demandada sigue un sistema distinto; pero con el nuevo sistema demuestra la citada casa mercantil que la participación en las ganancias que en dichos balances corresponde al apelado, recibió de ellos igual consideración que antes. En los anteriores balances figuraba el nombre del apelado entre los acreedores de Pizá Hermanos; pero al distribuirse el capital de la sociedad en los años de 1907 y 1910, dicha sociedad asignó al apelado, nueve mil cuatrocientos cincuenta dollars treinta y tres centavos ($9,450.33), en el año 1907, y siete mil setecientos ochenta y nueve dollars ochenta y siete centavos ($7,789.87), en 1910, cuyas sumas no son las cantidades de las ganancias liquidadas que pertenecen al apelado hasta esos años, sino los balances de la cuenta corriente de Gandía, en la fecha de cada uno de esos balances; y en cuya cuenta corriente la participación en las ganancias correspondientes al apelado, en cada balance figuraba como efectivo del apelado. Esta es la contestación que dan los apelantes, en aquellas fechas, a la cuestión que se discute. Como resultado de los anteriores hechos, llegamos a la conclusión de que Ricardo Gandía tiene derechos a sus ganancias, no en la forma que alegan los apelantes, o sea, a que se paguen, proporcionalmente, en toda clase de bienes, sino como ganancias líquidas que han de serle abonadas y pagadas en efectivo, después que los balances se hayan hecho en debida forma.

Habiéndose considerado completamente y resuelto el primer punto en controversia, pasemos al segundo. En el se-

gundo párrafo de la contestación presentada por los apelantes como demandados en el pleito, reconocen que la cuenta corriente del demandante arroja un balance a su favor de siete mil cuatrocientos sesenta dollars, setenta centavos ($7,460.70). Admiten también los apelantes en el quinto párrafo de su referida contestación, que para los fines del balance hecho en relación con la liquidación que se hizo con motivo de terminarse el contrato del apelado, el valor de la finca ''Santa Bárbara'' se fijó en sesenta mil dollars ($60,000), y puesto que se había hecho un inventario y balance el día 15 de enero 1910, dicho balance fué aceptado por ambas partes, en todas sus partes, excepto en la valoración de ''Santa Bárbara'' y la de las ganancias obtenidas de las cosechas de dicha finca, dándose a la primera un valor de veinte mil quinientos ochenta y cuatro dollars, sesenta y siete centavos ($20,584.67). Así resulta claro que los apelantes reconocen que la finca ''Santa Bárbara'' debe figurar en el balance de liquidación, con un aumento de su valor que represente la diferencia entre el valor dado a dicha finca, por los apelantes, que es de sesenta mil dollars ($60,000), y el valor de veinte mil quinientos ochenta y cuatro dollars, sesenta y siete centavos ($20,584.67), o sea, treinta y nueve mil cuatrocientos quince dollars, treinta y tres centavos, ($39,415.33), de cuya suma, el diez por ciento (10%), o sean tres mil novecientos cuarenta y un dollars, cincuenta y tres centavos ($3,941.53), pertenecen al demandante.

Por consiguiente, los apelantes han admitido así que deben al apelado:

| | | |
|---|---|---|
| (*a*) | El balance de la cuenta corriente_____ | $7,416.70 |
| (*b*) | El diez por ciento de la diferencia en el valor de ''Santa Bárbara''_____ | 3,941.53 |
| | Que dan un total de_____ | 11,358.23 |

Por consiguiente, la discusión en este punto se reduce a determinar si el valor de la finca ''Santa Bárbara'' es el de sesenta mil dollars, ($60,000), según expresan los apelantes,

u ochenta mil dollars ($80,000), como alega el apelado, y si las ganancias y cosechos de "Santa Bárbara" y "Sabana Seca" valían veinte mil dollars ($20,000) en la época en que cesó en su empleo el apelado, o si en la fecha del juicio, no puede hacerse la liquidación de ellas, hasta esa época; y que por consiguiente, no debe hacerse ningún abono por ello al apelado.

En el inventario de 1902, de los bienes pertenecientes a la compañía o sociedad Pizá Hermanos, no figura la finca "Santa Bárbara" como parte del capital de dicha casa, porque la adquisición de dicha finca tuvo lugar más tarde, y fué una de las muchas transacciones a que se dedica la expresada casa en la marcha regular de sus negocios.

Está también esto probado por la declaración de Servando Picó, testigo de los demandados, que declaró que la referida finca figura entre las cuentas de la mercantil, de igual manera que cualquier otra cuenta; que fué adquirida con el capital de la mercantil en el curso de sus operaciones en noviembre, 1902.

Que la finca "Santa Bárbara" valía más de sesenta mil dollars ($60,000) en la fecha en que cesó el demandante como empleado de la sociedad demandada, aparece claramente de la prueba presentada en el juicio.

En el balance que se hizo en 31 de diciembre 1907, se dice de modo claro que el capital líquido de la sociedad, que en esta fecha ascendía a ciento cuarenta y nueve mil, seiscientos veinte y tres dollars, sesenta y siete centavos ($149,623.67), debía en realidad calcularse en cuarenta y nueve mil novecientos sesenta y siete dollars, veinte centavos ($49,967.20), más de esa suma, porque la finca "Santa Bárbara" figuraba con un valor de veinte mil treinta y dos dollars, ochenta centavos, ($20,032.80), mientras que el valor de la misma en la referida fecha, o sea en 31 de diciembre 1907, era realmente de setenta mil dollars ($70,000), debido a las cosechas que existían en dicha finca.

En cuanto al inventario, debemos indicar que, aunque apa-

rece de las copias suministradas al apelado por los apelantes, que en el asiento a que se ha hecho referencia, se hizo constar que el referido valor se daba a dicha finca, por la cuantía del activo de la sociedad, se nos ha demostrado suficientemente por la prueba, que cuando el balance estaba listo, las anteriores palabras "por la cuantía del activo de la sociedad," no aparecían allí; y también se demostró por preponderancia de la prueba, que al cesar Ricardo Gandía, como empleado de la mercantil Pizá Hermanos, en 11 de marzo, 1910, esas palabras no se habían escrito; y que fueron escritas posteriormente.

En vista de esta conclusión, somos de parecer que la suma de setenta mil dollars ($70,000), fué declarada como el valor de la indicada finca, no "por la cuantía del activo de la sociedad" sino simplemente porque era el valor en que para cualquier fin legítimo, fué valorada dicha finca por la sociedad apelante. Pero aun suponiendo que la expresada cantidad se hubiera declarado "por la cuantía del activo de la sociedad," no podemos creer que los apelantes hubieran anotado en sus libros, un valor mayor que el verdadero, en perjuicio de sus relaciones, y para crear un crédito ficticio. Después de lo dicho, debe admitirse que la finca "Santa Bárbara" debe valer por lo menos setenta mil dollars ($70,000); en primer lugar, porque dicha sociedad admitió en su contestación a la demanda, que el valor de dicha finca era sesenta mil dollars ($60,000); y en segundo lugar, porque en su propia cuenta, según aparece de sus libros, se fija la suma de setenta mil dollars ($70,000), como valor de esa finca.

Pero debido a la prueba presentada por el demandante, somos de opinión que se ha demostrado que es posible que la finca tenga un valor mayor aun que la expresada suma, y que debe considerarse que vale más de ochenta mil dollars ($80,-000), en cuya cantidad fué valorada por el apelado. Las declaraciones que con respecto a este punto, prestaron los testigos presentados, no deja duda, a nuestro juicio, respecto a esta cuestión, a saber: que la finca "Santa Bárbara" el día

11 de marzo del año 1910, tenía un valor en el mercado de ochenta mil dollars ($80,000), y aun más de esa cantidad.

Por tanto, si se hace con la suma de ochenta mil dollars ($80,000) igual operación que se hizo con los sesenta mil dollars ($60,000), en cuya suma fué justipreciada la finca de referencia por la sociedad demandada, llegamos al siguiente resultado:

| | | |
|---|---|---|
| (*a*) | Balance de la cuenta corriente del Sr. Gandía _____ | $7,416.70 |
| (*b*) | Diferencia entre ochenta mil dollars ($80,000) y veinte mil quinientos ochenta y cuatro dollars sesenta y siete centavos ($20,584.67), cantidad con que aparecía anteriormente la finca "Santa Bárbara," ascendente a cincuenta y nueve mil cuatrocientos quince dollars treinta y tres centavos ($59,415.33), de cuya cantidad el diez por ciento (10%) es _____ | 5,941.53 |
| | Haciendo un total de_____ | 13,358.23 |

Habiendo quedado así resueltos dos de los puntos de desacuerdo entre las partes, en la controversia sometida a nuestra consideración, debemos por último considerar el tercero y único que queda.

Ahora sólo falta la partida de dos mil dollars ($2,000) para completar la cuota total de lo que el apelado, como demandante, reclamó en su demanda y la suma que se le adjudicó en la sentencia. ¿Cómo resolveremos este punto? Veamos.

Cuando Ricardo Gandía el día 11 de marzo de 1910, dejó de ser empleado de la mercantil de los apelantes, éstos tenían en cultivo una gran parte de la finca de "Santa Bárbara" sembrada de cañas y piñas, y otra parcela de terreno situada en "Sabana Seca," sembrada de piñas solamente, siendo la cuestión que ahora se considera, si esos campos de caña y

piña deben tasarse, y liquidarse su valor, en la fecha expresada; o si tal tasación o liquidación debe quedar pendiente hasta que se recojan las cosechas, para entonces distribuir las ganancias que correspondan a cada parte con derecho en la repartición.

Por cuanto que Ricardo Gandía era solamente un empleado y apoderado de la casa mercantil de Pizá Hermanos, su compensación debió haber cesado, y en realidad cesó al terminar las obligaciones que desempeñaba en el negocio de dicha casa, y por esta razón, el valor de los referidos cañaverales y piñales debió haberse liquidado en aquella época, para fijar la suma del (10%) diez por ciento del valor de los mismos, a que tenía derecho; y teniendo en cuenta que la referida mercantil estaba dispuesta a liquidar en 11 de marzo de 1910, todo el negocio de la sociedad, y aún el aumento en valor de la finca "Santa Bárbara," con respecto a la que sólo hubo un desacuerdo referente a su valor, no podemos comprender por qué no puede hacerse lo mismo con los cañaverales y piñales, que indudablemente tenían algún valor en la referida fecha, aun cuando fuera muy pequeño.

El apelado no está obligado a sufrir pérdidas que hayan podido ocasionarse en relación con los cañaverales y piñales de referencia, con posterioridad a la fecha en que cesó como empleado de la mercantil demandada, en caso de que tales pérdidas realmente se hayan ocasionado; ni tiene tampoco el apelado derecho a la compensación del diez por ciento (10%) de las ganancias líquidas obtenidas después de la fecha en que dejó de ser empleado de la referida mercantil, y cuyas ganancias hayan podido obtenerse como consecuencia de los gastos hechos, atenciones y trabajo invertidos por la sociedad mercantil en los cañaverales y piñales referidos. Por consiguiente, el valor de estos últimos debe liquidarse y fijarse según existía en la fecha en que el apelado terminó su empleo.

Sostenemos, por lo tanto, que los cañaverales y piñales debieron haber sido tasados y valorados en 11 de marzo de 1910, para adjudicar la participación del diez por ciento

(10%) de su valor, al empleado que cesó en el empleo de la referida mercantil, y que según el contrato de servicios, tenía derecho a dicho diez por ciento (10%) en efectivo, en aquella fecha.

Según la prueba practicada en la corte inferior, y que aparece en el récord, había en la finca ''Santa Bárbara,'' en 11 de marzo de 1910, unos ciento quince (115) cuerdas sembradas de cañas de plantilla, y unas veinte (20) cuerdas sembradas de tocones, y ademas ochenta (80) cuerdas de piñás; mientras que en ''Sabana Seca'' había otra parcela de terreno, de treinta (30) cuerdas, que asimismo estaba sembrada de piñas.

La prueba de peritos practicada ante la corte ha demostrado que el valor líquido de la referida caña de azúcar, el día 11 de marzo, debió haber sido de diez mil quinientos treinta dollars ($10,530), y el de las ciento diez (110) cuerdas de piñas, cuarenta y cuatro mil dollars ($44,000), cuyo total de cincuenta y cuatro mil quinientos treinta dollars ($54,530), representa una valoración que es más de dos veces mayor de la de veinte mil dollars ($20,000), en que su valor fué calculado por el apelado, en sus alegaciones y en su propia declaración.

Sin embargo, puesto que el apelado limitó la petición hecha en su demanda, al diez por ciento (10%) de veinte mil dollars ($20,000), debemos solamente agregar la suma de dicho diez por ciento (10%), o sea dos mil dollars ($2,000), a la suma de trece mil trescientos cincuenta y ocho dollars veinte y tres centavos ($13,358.23) a que se ha hecho referencia, llegando así al gran total de quince mil trescientos cincuenta y ocho dollars veinte y tres centavos ($15,358.23), que es la cantidad que se reclama en la demanda objeto de este pleito, y la suma total adjudicada en la sentencia contra la cual se ha interpuesto esta apelación, cuya suma, la sociedad demandada Pizá Hermanos, debe, por tanto, al apelado Ricardo Gandía.

Estimando que los fundamentos que el juez de la corte inferior expone en su opinión, que consta en los autos, así como la sentencia dictada en este caso, fueron correctos, y bien fun-

dados en la ley y los hechos, declaramos que dicha sentencia debe ser confirmada en todas sus partes.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández, y Asociados Wolf y del Toro.

El Juez Asociado Sr. Aldrey, no tomó parte en la resolución de este caso.